Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/10/2023 09:07 AM CST

Avis Rent A Car System, Inc., appellee,
v. Roynetta McDavid, appellant.

___ N.W.2d ___

Filed February 10, 2023.    No. S-22-147.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

2. **Summary Judgment: Jurisdiction: Appeal and Error.** When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions; an appellate court may also specify the issues as to which questions of fact remain and direct further proceedings as the court deems necessary.

3. **Contracts.** The interpretation of a contract and whether the contract is ambiguous are questions of law.

4. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

5. **Contracts.** The court must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them.

6. ____. The fact that the parties have suggested opposite meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.

7. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Reversed and remanded with directions.

Sean P. Rensch, of Rensch & Rensch Law, P.C., L.L.O., for appellant.

Joel M. Carney and Andrew J. McElmeel, of Goosmann Law Firm, P.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Roynetta McDavid rented a car from Avis Rent A Car System, Inc. (Avis), in Nebraska to take a trip to Tennessee with her mother and sister. The rental did not go as planned. The trouble started after the traveling party reached Tennessee, where McDavid's sister, despite McDavid's admonition to the contrary, drove the car and was involved in a collision in which passengers in another car were injured. Things got more complicated for McDavid when Avis paid the injured parties just over $40,000 and began demanding that McDavid reimburse it, contending that an indemnification provision in her rental agreement required her to do so. After McDavid failed to pay, Avis filed a lawsuit and obtained summary judgment against McDavid. In this appeal filed by McDavid, however, we find that the district court erred and that it is McDavid who is entitled to summary judgment. Accordingly, we reverse the judgment and remand the cause with directions to enter summary judgment in favor of McDavid.

## BACKGROUND

*Factual History.*

McDavid rented a car from Avis pursuant to a car rental agreement. Under the agreement, McDavid was the only authorized driver of the car. McDavid, a Nebraska resident, planned to drive with her mother and sister to visit another sister who lived in Tennessee. According to McDavid, she communicated to her traveling companions that they could not drive the car.

Despite McDavid's instructions, while in Tennessee and while McDavid was asleep, McDavid's sister drove the car to a friend's house. During her return, McDavid's sister was involved in an accident with another vehicle. Three passengers in the other vehicle were injured in the collision.

The parties injured in the accident filed a lawsuit against McDavid's sister in Tennessee state court. Avis was not named as a defendant, but it paid the injured parties a total of $40,100. The injured parties executed a release of their claims against Avis, McDavid, and McDavid's sister.

Sedgwick, an entity that provides "claims administration services" for Avis, subsequently sent letters to McDavid demanding that she pay Avis $40,100. The letters stated that Sedgwick had determined that the car McDavid rented was "involved in an at fault accident"; that Avis had paid the injured parties; and that under the rental agreement, McDavid was responsible for reimbursing Avis. When McDavid did not pay, Avis sued her.

*Procedural History.*

Avis' lawsuit alleged that by failing to pay Avis $40,100, McDavid breached the rental agreement's indemnification provision. As relevant here, the rental agreement provided:

> You shall defend, indemnify, and hold [Avis], our parent and affiliated companies harmless from all losses, liabilities, damages, injuries, claims, demands, awards, costs, attorney fees, and other expenses incurred by [Avis] in any manner from this rental transaction or from the use of the car by you or any person, including claims of, or liabilities to, third parties.

Avis asserted that under this language, McDavid was responsible for reimbursing it for "bodily injury payments" that Avis had made.

Both Avis and McDavid eventually moved for summary judgment. The summary judgment evidence was consistent with the factual history recited above. Avis offered no

evidence that the injured parties had ever sued or made any demand against it or that otherwise explained why it paid the injured parties. At the summary judgment hearing, Avis acknowledged that it was not seeking payment for damages to its rental car.

The district court granted summary judgment to Avis and entered judgment against McDavid for $40,100. McDavid timely appealed, and we moved the case to our docket.

## ASSIGNMENTS OF ERROR

McDavid assigns, condensed and restated, that the district court erred in two ways when it denied summary judgment to her and granted summary judgment to Avis. She contends that the district court erred (1) by finding that she was obligated to indemnify Avis under the rental agreement and (2) by rejecting her argument that, to the extent the rental agreement required McDavid to indemnify Avis, it was void against public policy.

## STANDARD OF REVIEW

[1] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heist v. Nebraska Dept. of Corr. Servs.*, 312 Neb. 480, 979 N.W.2d 772 (2022).

[2] When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions; an appellate court may also specify the issues as to which questions of fact remain and direct further proceedings as the court deems necessary. *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015).

[3,4] The interpretation of a contract and whether the contract is ambiguous are questions of law. *Timberlake v. Douglas County*, 291 Neb. 387, 865 N.W.2d 788 (2015). An appellate court independently reviews questions of law decided by a lower court. *Id.*

ANALYSIS

McDavid's primary argument on appeal is that Avis cannot show that the indemnification provision of the rental agreement required her to reimburse Avis for the amounts it paid the parties injured in the car accident. She contends that the rental agreement obligated her to indemnify Avis only if Avis was legally obligated to pay the injured parties, but that Avis has not shown that it was liable. We consider this argument below, but first review general principles regarding indemnification that are relevant to this case.

*General Principles Regarding Indemnification.*

Indemnification involves the complete shifting of the cost of an injury from one party to another. See *Kuhn v. Wells Fargo Bank of Neb.*, 278 Neb. 428, 771 N.W.2d 103 (2009). An obligation to indemnify may arise by law or by contractual agreement. See *id.*

An obligation to indemnify arises by operation of law when one party is compelled to pay money which in justice another ought to pay. See *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018). So, for example, we have recognized that a party has a claim for indemnification if it pays a common liability that, as between itself and another party, is altogether the responsibility of the other party. See *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015). See, also, *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 232 Neb. 763, 770, 443 N.W.2d 872, 877 (1989) ("[i]ndemnity will be allowed where the indemnitee has incurred liability to a third person because of negligent reliance upon the care that the indemnitor should have exercised").

As the foregoing discussion illustrates, whether the party seeking indemnity paid a third party under legal obligation is a central question in determining if an obligation to indemnify arises by operation of law. This has obvious ramifications when a party claims a right to indemnity by operation

of law after settling a claim with a third party. In that circumstance, a party seeking indemnity must generally prove that it was actually liable for the underlying claim. See, e.g., *Pennant Service Co., Inc. v. True Oil Co.*, 249 P.3d 698, 704 (Wyo. 2011) ("the indemnitee must not be a mere volunteer who has settled the underlying claim when there was no exposure to legal liability that obligated him or her to do so"); *Grinnell Mut. Co. v. Center Mut. Ins. Co.*, 658 N.W.2d 363, 378 (N.D. 2003) ("[g]enerally, an indemnitee who settles a claim before judgment must prove that it was not a volunteer, but was actually liable, in order to recover indemnity"); *McNally & Nimergood v. Neumann-Kiewit*, 648 N.W.2d 564, 574 (Iowa 2002) ("if an indemnitee had no liability for the loss in the inception, then any payment made by the indemnitee is considered purely voluntary and not subject to indemnification"). See, also, 42 C.J.S. *Indemnity* § 47 at 194 (2017) ("[a]n indemnitee who settles a claim before judgment generally must prove actual liability in order to recover indemnity . . .").

Many courts have recognized an exception to the general rule that a settling party must show actual liability in order to be entitled to common-law indemnity. This exception applies in cases in which the would-be indemnitor is provided notice of the underlying claim against the indemnitee and declines an opportunity to assume the defense. See, *Pennant Service Co., Inc., supra*; *Grinnell Mut. Co., supra*; *Valloric v. Dravo Corp.*, 178 W. Va. 14, 357 S.E.2d 207 (1987) (collecting cases). But in order for this exception to apply, the party seeking indemnity must still show that it was potentially liable and that the settlement amount was reasonable in light of that potential liability. See, *Pennant Service Co., Inc., supra*; *Grinnell Mut. Co., supra*; *Valloric, supra*. See, also, 42 C.J.S., *supra*.

While these rules govern indemnification obligations imposed by law, parties are free to create separate or additional indemnification obligations by agreement. See *Kuhn v. Wells Fargo Bank of Neb.*, 278 Neb. 428, 771 N.W.2d 103 (2009). So, for example, parties can, by contract, "alter the

common law rules on indemnity by calling for indemnification in the absence of underlying liability between the indemnitee and the injured party." *McNally & Nimergood*, 648 N.W.2d at 575. Avis appears to take the position that the parties did so in the rental agreement at issue in this case. We turn to that question now.

*The Rental Agreement.*

The parties take divergent positions on whether the indemnification provision in the rental agreement modifies the common-law rule that would generally require Avis to establish its liability to the injured parties in order to receive indemnity from McDavid. Although its position is not entirely spelled out, Avis seems to contend that under the rental agreement, it is entitled to indemnification for any amounts it chose to pay third parties related to McDavid's rental of its vehicle without regard to whether Avis was actually, or even potentially, liable to make such payments. Indeed, at oral argument, counsel for Avis claimed that Avis would not only be entitled to be indemnified for payments Avis voluntarily made to others arising out of McDavid's rental, but also that it would be entitled to indemnification even if those payments were made by mistake. As for McDavid, she contends that Avis must show that it was liable to the injured parties in order to be entitled to recovery under the indemnification provision of the rental agreement.

[5,6] We interpret contractual indemnification provisions in the same fashion we interpret other contracts. See *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 66, 917 N.W.2d 435, 458 (2018) ("[a]n indemnity agreement is a contract to be construed according to the principles generally applied in construction or interpretation of other contracts"). Accordingly, we briefly recount some general principles of contractual interpretation we will apply here. A contract written in clear and unambiguous language must be enforced according to its terms. See *Benjamin v. Bierman*, 305 Neb.

879, 943 N.W.2d 283 (2020). The court must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Id.* The fact that the parties have suggested opposite meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Id.*

Avis does not point to any language in the rental agreement showing that McDavid agreed to indemnify it for any amounts it voluntarily chose to pay others related to her rental, irrespective of whether Avis faced liability. Neither do we discern any such language. McDavid's position, on the other hand, finds support in the indemnification provision's use of the word "incurred." Recall that the indemnification provision quoted above obligates McDavid to indemnify Avis for "expenses *incurred* by [Avis] in any manner from this rental transaction or from the use of the car by you or any person." (Emphasis supplied.)

There is ample authority supporting the proposition that one "incurs" an expense only when there is a legal obligation to pay it. Both legal and lay dictionaries' definitions of "incur" reference concepts of liability or obligation. Black's Law Dictionary defines "incur" as "[t]o suffer or bring on oneself (a liability or expense)." Black's Law Dictionary 917 (11th ed. 2019). A lay dictionary offers a similar meaning: to "become liable or subject to." Webster's Third New International Dictionary of the English Language, Unabridged 1146 (1993).

Cases interpreting the word "incur" are consistent with these dictionary definitions. This court, in interpreting a contract almost 50 years ago, observed that "[o]rdinarily the term 'incurred' is construed to mean that one has become obligated or liable for the expense involved." *Hollister v. Government Emp. Ins. Co.*, 192 Neb. 687, 689, 224 N.W.2d 164, 165 (1974). Another court was "impressed with the unreality of the position that [a party] has incurred any expense" when the payment made was not "ever demanded, insisted upon or even expected." *Hoffman v. Travelers Indem. Co. of America*, 144

So. 3d 993, 999 (La. 2014), (internal quotation marks omitted). Multiple federal courts have noted, in interpreting federal tax laws, that "'expenses are not incurred unless there has arisen a legal obligation to pay them.'" *Stern-Slegman-Prins Co. v. Commissioner of Int. Rev.*, 79 F.2d 289, 291 (8th Cir. 1935), quoting *Bauer Bros. Co. v. Commissioner of Internal Revenue*, 46 F.2d 874 (6th Cir. 1931). Similar interpretations of the word "incur" in other contexts are not difficult to find. See, e.g., *Musaelian v. Adams*, 45 Cal. 4th 512, 517, 198 P.3d 560, 562, 87 Cal. Rptr. 3d 475, 478 (2009) ("the ordinary and usual meaning of the word 'incur' is to 'become liable,'" quoting *Trope v. Katz*, 11 Cal. 4th 274, 902 P.2d 259, 45 Cal. Rptr. 2d 241 (1995)); *Nagy v. Lumbermens Mutual Casualty Company*, 100 R.I. 734, 737, 219 A.2d 396, 399 (1966) ("[t]he word 'incurred' means to become liable for and it connotes an assumption of an obligation to pay"). Perhaps most pertinent for our purposes, a federal district court concluded, in a case that involved a car rental indemnity agreement nearly identical to the one at issue here, that "incurred" "refer[s] to obligations that [the car rental company] became liable for or subject to as a consequence of its rental of the motor vehicle and not to include voluntary payments." *Enterprise Rent-A-Car Co. of Boston, LLC v. Maynard*, No. 2:11-cv-00047-JAW, 2012 WL 1681970, at *7 n.4 (D. Me. May 14, 2012).

Because the word "incurred" carries with it notions of liability and obligation, we find that the indemnity provision in the rental agreement cannot reasonably be interpreted in the manner Avis suggests. Instead, we find that the agreement required Avis to demonstrate, at a minimum, that it was potentially liable to the injured parties. We therefore proceed to consider whether Avis demonstrated that it was actually or potentially liable to the injured parties.

*Avis' Liability.*

In some cases, a court might begin its assessment of the actual or potential liability of a party seeking indemnity by

evaluating whether there was evidence to support theories of recovery asserted by the party or parties with whom a settlement was reached. See, e.g., *Chicago Ins. Co. v. Archdiocese of St. Louis*, 740 F.3d 1197 (8th Cir. 2014). In this case, however, we have no evidence that the injured parties sued or even made a demand of Avis, much less that they asserted any specific theory of Avis' liability. Neither has Avis identified a legal theory upon which it could have been found liable to the injured parties. Avis' brief did not mention any basis for liability, and its counsel admitted at oral argument that he could not identify any theory under which Avis could possibly have been liable to the injured parties.

To be sure, there is evidence that Avis owned a car that was involved in the accident that injured three people in Tennessee. But even if it is assumed that the driver of a car owned by Avis, McDavid's sister, was at fault for the accident and resulting injuries, that alone could not result in liability to Avis. Because the injuries at issue occurred in Tennessee, Tennessee tort law governs claims arising from that event. See *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 140, 903 N.W.2d 432, 459 (2017) ("'[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties . . .'"), quoting Restatement (Second) of Conflict of Laws § 146 (1971). The Tennessee Supreme Court has explained, however, that there is "no Tennessee statute or reported appellate decision imposing vicarious liability on a car rental company arising out of the operation of its vehicles by a rental customer." *Martin v. Powers*, 505 S.W.3d 512, 523 (Tenn. 2016). And even if Tennessee law imposed vicarious liability, the Tennessee Supreme Court, like many other courts, has recognized that a federal statute known as the Graves Amendment, see 49 U.S.C. § 30106 (2018), would preempt any state law holding a car rental company like Avis vicariously liable for the actions of those driving its car. See *Martin, supra*. See, also, *Carton v. General Motor Acceptance Corp.*, 611 F.3d

451 (8th Cir. 2010); *Puerini v. LaPierre*, 208 A.3d 1157 (R.I. 2019) (collecting cases).

We find additional support for our conclusion that Avis cannot demonstrate liability in *Enterprise Rent-A-Car Co. of Boston, LLC v. Maynard*, No. 2:11-cv-00047-JAW, 2012 WL 1681970 (D. Me. May 14, 2012), a federal district court case we discussed above. In that case, much like this one, the court found that a car rental company that was seeking indemnity for payments it made to a party injured in an accident involving one of its vehicles was not entitled to indemnity, because the car rental company could not show that it was liable to the party with whom it settled.

Even assuming that Avis could establish a right to indemnity by showing that it was potentially liable to the injured parties, it would fare no better. In the absence of any viable theory of liability, there is no basis to find that Avis was potentially liable to the injured parties in any amount. See, e.g., *Chicago Ins. Co., supra* (holding that party seeking indemnification could not show potential liability where governing law did not permit claimant's recovery). And even if there were a viable theory of liability, there is no evidence that would allow for a determination that the amount of the settlement was reasonable in light of Avis' potential liability.

*Resolution.*

To summarize, we find that the contractual indemnification provision was unambiguous in requiring that Avis demonstrate, at the very least, potential liability to the injured parties. We find no evidence in the record, however, by which a reasonable trier of fact could find that Avis was actually or potentially liable. Accordingly, we find that the district court erred in granting summary judgment to Avis and in denying summary judgment to McDavid.

[7] Because we find that McDavid was entitled to summary judgment on the grounds that Avis failed to demonstrate a right to indemnity under the rental agreement, we need not

and do not address McDavid's alternative assignment of error contending that to the extent the rental agreement required her to indemnify Avis, it was void against public policy. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Cain v. Lymber*, 306 Neb. 820, 947 N.W.2d 541 (2020).

## CONCLUSION

Because the district court erred in granting summary judgment to Avis and in denying summary judgment to McDavid, we reverse the judgment and remand the cause with directions to enter summary judgment in favor of McDavid.

Reversed and remanded with directions.