IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


GRAHAM V. PRESCOTT


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


TRACY GRAHAM AND CAMWELL PROPERTIES, L.L.C., APPELLANTS,

V.

LOREN C. PRESCOTT ET AL., APPELLEES.


Filed March 19, 2024.    No. A-23-160.


Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Terrance A. Poppe and Gina M. Elliott, of Morrow, Poppe, Watermeier & Lonowski, P.C., for appellant.

Corey J. Wasserburger, of Johnson, Flodman, Guenzel & Widger, L.L.P., for appellee.


MOORE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

### INTRODUCTION

Tracy Graham and Loren C. Prescott lived together for a number of years, and during that time they acquired certain real estate and business interests. When their relationship ended, Graham filed a complaint in the Lancaster County District Court seeking relief related to those interests. The parties entered into a settlement agreement to provide for a division of their shared assets and debts; a court order was entered requiring the parties to comply with the agreement and the action was dismissed. The agreement required Graham to execute quitclaim deeds and other documents necessary to transfer her interest in certain real estate and business assets. Prescott was to pay Graham $150,000 "within 90 days of the execution" of the agreement "or at such time as Graham completes each of her transfers of interests . . . whichever is later." Although Prescott paid Graham the $150,000 he owed under the agreement, Graham claimed it was not timely. As such,

- 1 -

she sought to hold Prescott in contempt and to enforce a "Penalty Payment" provision in the agreement which Graham claimed required Prescott to pay her an additional $39,000. The district court denied Graham's request for relief, except for a $628 judgment entered against Prescott related to personal property that is not at issue in this appeal. We affirm.

BACKGROUND

COMPLAINT AND AGREEMENT

On May 7, 2019, Graham filed a "Complaint for Quiet Title, Accounting, Dissolution of LLC and Partition" in the district court at case no. CI 19-1451. Relevant to this appeal, it alleged that Graham and Prescott were in a "romantic relationship" for 5 years, and that their separation resulted in "several property, business, and custody disputes." The parties had two children together. A separate paternity action was filed; no issues related to the children were involved in the present case. Other parties related to various business interests were named in the complaint, but they are not relevant to this appeal.

On July 29, 2019, Graham and Prescott signed a "Memorandum of Understanding and Settlement Agreement" (agreement). Each party was represented by an attorney at the time the agreement was negotiated and executed. The agreement indicated that it was intended to "resolve all claims asserted" in case No. CI 19-1451, which case was to be dismissed with prejudice.

Paragraph 2 of the agreement is titled "**REAL ESTATE**[.]" Under paragraphs 2.A. ("Woodstock Avenue"), 2.B. ("Baldwin Avenue"), 2.C. ("Vine Street"), and 2.D. ("W Street"), Prescott was to receive the four specified pieces of real property. Paragraph 2.A. also provided that "Graham shall, prior to payment of the amounts specified in Paragraph 9.A below, execute a Quitclaim Deed to Prescott releasing her interest in said real estate." Paragraphs 2.B., 2.C., and 2.D. included identical language, but added the two words that we have italicized: "Graham shall, prior to payment of the amounts specified in Paragraph 9.A below, execute a Quitclaim Deed to Prescott releasing her interest, *if any*, in said real estate." Prescott was also to "remove Graham from any house insurance, tax liability or lien within thirty days of the execution of each Quitclaim Deed contemplated above."

Under paragraph 6, Prescott was to retain "all interest which he may have in Prescott Ventures, Inc., Prescott Sandwiches, Inc., and GP Land." It further states, "Graham, prior to payment of the amounts contemplated in paragraph 9.A below, shall execute quitclaim deeds and any other documents necessary to disclaim any interest in said entities or their assets." Prescott was also to receive Camwell Properties, L.L.C. (Camwell) and Graham was again required to transfer her interest in Camwell to Prescott prior to receiving payment under paragraph 9.A.

Paragraph 9 is titled "**PROPERTY PAYMENTS:**" and provides as follows:

A. **Initial Payment:** Prescott agrees to pay Graham One Hundred and Fifty Thousand Dollars ($150,000.00) within 90 days of the execution of this Agreement or at such time as Graham completes each of her transfers of interests under paragraphs 2.A, 2.B, 2.C, 2.D, and 6 above, whichever is later. The parties anticipate that respective duties of performance shall be complete within 90 days of the execution of this Agreement.

B. **Penalty Payment:** Should Prescott fail to make the payment under paragraph 9.A within 120 days of the execution of this Agreement, Prescott shall owe Graham an additional $1,500.00 as a penalty beginning on the first day of the month after such failure

and continuing on the first day of each month thereafter until that payment under paragraph 9.A is made.

On January 23, 2020, Graham filed a "Motion to Enforce Settlement Agreement" seeking an order "enforcing the settlement agreement entered into by the parties" and "dismissing this matter with prejudice." After a hearing, the district court entered an order on April 6, granting Graham's motion. It ordered the parties to comply with the terms of the agreement and it dismissed the action with prejudice.

SUBSEQUENT COURT PROCEEDINGS

More than a year later, on June 29, 2021, Graham, with different legal counsel, filed an "Application for an Order to Show Cause," alleging that Prescott had refused to "obey" the agreement by not paying Graham "$62,216.07 plus the penalty now totaling $27,000 as of May 1, for a total amount due and owing of $89,216.07." Graham requested that the district court enter an order to show cause and award her attorney fees. A show cause order was entered. On July 14, Graham filed another motion requesting that the court enter an order determining Prescott's liability under the agreement.

Trial was held on October 31, 2022. Exhibits were received into evidence and the parties each testified regarding the agreement and their actions that followed.

There was no dispute by the parties that Prescott owed $150,000 to Graham for her share of real estate and business interests. Nor did Prescott dispute owing $11,417 to reimburse Graham for a credit card debt related to one of the businesses, or that Graham was entitled to certain items of personal property.

Prescott testified that between July 2019 and December 2021, he made numerous requests to Graham that she transfer her interests in the property he was to receive under the agreement. However, he received "[v]irtually no response" from her. According to Graham, she believed that Prescott's attorneys would prepare the documents necessary to comply with the agreement. She acknowledged, however, that no part of the agreement required Prescott to prepare those documents. And when asked if Prescott's obligation to pay her arose after she transferred her interest, she responded, "Yes." When asked whether there was anything preventing her from executing a quitclaim deed to convey certain property to Prescott in August of 2019, Graham responded that her attorney told her they were waiting on documents from Prescott and that she "had no action to take." Graham acknowledged that a month after signing the agreement, Prescott's attorney sent Graham's attorney a draft document which would have transferred Graham's interest in Camwell to Prescott. However, the document contained various blank spaces, including the "Purchase Price." Graham stated that she would not sign the document without knowing how much she would receive in exchange for transferring her interest in the business. Although Prescott acknowledged that he did not expect Graham to sign the document with "blanks in it," he did expect a response from her.

Prescott paid Graham $99,197.73 on June 24, 2020, after selling the parties' former residence on Woodstock Avenue. The payment constituted the entire proceeds from the sale of the property. Prescott acknowledged that he made "about $1.3 million" from the sale of certain assets in August 2020, but he invested those proceeds in real estate rather than paying Graham the

remaining amount he owed her. It was Prescott's understanding that he and Graham would each "take certain actions in sequence . . . [Graham] would sign over her interest in real estate" and then Prescott would be obligated to pay her.

The parties stipulated that between September and December of 2021, there were negotiations taking place regarding the documentation necessary to transfer Graham's interest in Camwell. Graham said that she refused to sign the agreement until she had received the remaining $62,000 that she was owed. She also claimed that her attorney instructed her "not to sign anything, because [they] hadn't received payment or agreements in order to hold [Prescott] accountable." On December 8, Graham signed the document transferring her interest in Camwell to Prescott. That same day, Prescott paid Graham $62,216.07. That sum included the remainder of the $150,000 he was obligated to pay her, as well as the reimbursement for the credit card debt ($11,413.80) that he had agreed to pay under the agreement.

Graham believed she was owed the "penalty" because the agreement was "written the way it was . . . to have a penalty in order to get [her] paid, and [her] whole goal with that agreement was to be out of all of it in 90 days." Graham asked the district court to require Prescott to pay her $39,000 ($1,500 per month from November 1, 2019, to December 8, 2021) for "liquidated damages" pursuant to paragraph 9.B. of the agreement. When asked how "not getting the $150,000 within 90 days impact[ed] [her] financially," she responded that she was not able to make a down payment on a house. She was finally able to purchase a house in April 2022 after she received the full $150,000 from Prescott. Graham waited until she received the last payment from Prescott to purchase the house because she wanted to make as large of a downpayment on her new house as possible and she did not "feel comfortable" making a 20 percent downpayment until she had received the full $150,000 that Prescott promised to pay her. She claimed that she was negatively impacted by her inability to purchase a house in 2019, since "interest rates went up." Bank documentation showed that Graham had been preapproved for loans in August 2020 with interest rates of 2.625 percent and 2.875 percent, whereas, at the time she purchased her home in April 2022, her interest rate was 4.375 percent.

Graham further requested that the district court award her attorney fees and $628 for personal property items which she claimed Prescott failed to provide her as he was required under the agreement.

DISTRICT COURT'S ORDER

On January 30, 2023, the district court entered an order finding that Prescott did not violate the court's April 2020 order. It also denied Graham's request for further amounts owed by Prescott, except for $628 related to personal property that Prescott was agreeable to paying; judgment was entered for that amount.

In reaching its decision, the district court determined that Graham's obligations under the agreement to "transfer[] each of her interests in real estate and business assets" were conditions precedent to Prescott's obligation to "make payment under Paragraph 9.A." and that "Graham offered no evidence of any efforts she made to meet her obligations under the Agreement after its execution until December 2021 when she transferred her interest in Camwell." The court also found that Graham offered no evidence that Prescott waived the conditions precedent. In reaching this conclusion, the court stated that:

the Agreement repeatedly and unambiguously ties Prescott's obligation to pay under Paragraph 9.A. to specific acts that Graham must first take under Paragraphs 2.A, 2.B., 2.C., 2.D, and 6. The Agreement uses the phrases "prior to," "at such time" and "whichever is later" to indicate that the obligation . . . to pay under Paragraph 9.A does not arise *until and after* such time as Graham undertakes each of the specified acts under the Agreement.

(Emphasis in original.)

The district court determined that Graham had not taken the requisite steps to trigger Prescott's obligation under paragraph 9.A. by the time Prescott paid her the full $150,000. The court also observed that Graham "still ha[d] not taken some of those steps as of the time of trial." The court further reasoned that since paragraph 9.A. had not been triggered, neither had paragraph 9.B., noting that "[p]aragraphs 9.A and 9.B must be read in concert to provide that a penalty may be owed under Paragraph 9.B only after Prescott's obligation to pay becomes due under Paragraph 9.A." It stated that a result "in which Prescott owed monthly penalty payments under Paragraph 9.B *while not owing* any amount under Paragraph 9.A. would be absurd." (Emphasis in original.)

Other than the $628 judgment against Prescott related to personal property, the district court denied all relief requested by Graham. The court dismissed other defendants from the action and denied "[a]ny request for relief by any party not specifically granted by this order."

Graham appeals.

## ASSIGNMENTS OF ERROR

Graham assigns that the district court erred in ruling that Prescott did not owe her (1) liquidated damages and (2) attorney fees.

## STANDARD OF REVIEW

A settlement agreement is subject to the general principles of contract law. See *Thrower v. Anson*, 276 Neb. 102, 752 N.W.2d 555 (2008). The interpretation of a contract and whether the contract is ambiguous are questions of law. *Avis Rent A Car Sys. v. McDavid*, 313 Neb. 479, 984 N.W.2d 632 (2023). An appellate court independently reviews questions of law decided by a lower court. *Id.*

A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *In re Estate of Forgey*, 298 Neb. 865, 906 N.W.2d 618 (2018). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

## ANALYSIS

### PAYMENT UNDER PARAGRAPH 9.B.

Graham argues that the district court erred in not awarding her liquidated damages. Her claim for liquidated damages arises from paragraph 9.B. of the agreement. However, as set forth above, the district court determined that since paragraph 9.A. had not been triggered, neither had paragraph 9.B. It concluded that "[p]aragraphs 9.A and 9.B must be read in concert to provide that a penalty may be owed under Paragraph 9.B only after Prescott's obligation to pay becomes due under Paragraph 9.A." The court held that Graham's obligations to Prescott under paragraphs 2.A.,

2.B., 2.C., 2.D., and 6 constituted conditions precedent to Prescott's obligation to her under paragraph 9.A. We agree.

A condition precedent is a condition that must be performed before the parties' agreement becomes a binding contract or a condition which must be fulfilled before a duty to perform an existing contract arises. *Dick v. Koski Prof. Group*, 307 Neb. 599, 950 N.W.2d 321 (2020), *modified on denial of rehearing* 308 Neb. 257, 953 N.W.2d 257 (2021). This is in contrast to a promise in a contract, the nonfulfillment of which is a breach. See *id.* Whether language in a contract is a condition precedent depends on the parties' intent as gathered from the language of the contract. *Id.* The words "as a condition for" are clearly language intended to create a condition precedent. *Id.* Terms such as "if," "provided that," "when," "after," "as soon as," "subject to," "on condition that," or some similar phrase are evidence that performance of a contractual provision is a condition; however, an intention to make a duty conditional may be manifested by the general nature of an agreement, as well as by specific language. *Id.* Where the parties' intent is not clear, the language is generally interpreted as promissory rather than conditional. *Id.*

Here, as the district court noted, the agreement contained language such as "prior to," "at such time," and "whichever is later" to indicate that Prescott's obligation to pay Graham $150,000 under paragraph 9.A. did not arise until Graham transferred each of her real estate and business interests to Prescott. Paragraph 9.A. specifically states:

> Prescott agrees to pay Graham One Hundred and Fifty Thousand Dollars ($150,000.00) within 90 days of the execution of this Agreement *or* at such time as Graham completes each of her transfers of interests under paragraphs 2.A, 2.B, 2.C, 2.D, and 6 above, *whichever is later*. The parties anticipate that respective duties of performance shall be complete within 90 days of the execution of this Agreement.

(Emphasis supplied.)

A court should avoid interpreting contract provisions in a manner that leads to unreasonable or absurd results that are obviously inconsistent with the parties' intent. *Timberlake v. Douglas County*, 291 Neb. 387, 865 N.W.2d 788 (2015). The plain language of the agreement required Graham to execute certain documents before Prescott was required to pay her.

Graham nevertheless contends that Prescott was "in willful and contemptuous contempt of a court order by not paying the $150,000.00 within 90 days of the signed agreement" and therefore owes her "$39,000.00 in liquidated damages." Brief for appellant at 14. However, the 90-day language in the contract only provided that the parties anticipated completion of their "respective duties" within 90 days and that Prescott would pay the amount due to Graham in either 90 days or upon Graham's completion of the transfer of her interests in real estate and business assets -- "whichever is later." Graham did not fulfill her initial duty to transfer real estate and business assets to Prescott within those anticipated 90 days, thus not yet triggering Prescott's duty to pay her the $150,000 until she completed the transfer of her interests. Although Graham suggested to the district court that somehow the burden was on Prescott to provide her the necessary documentation to effectuate those transfers, she acknowledged that the agreement did not require that.

Further, Prescott testified that he made numerous requests to Graham that she transfer her interests in the property he was owed under the agreement. At trial, Graham indicated her attorney

instructed her not to sign certain documents. And in her brief to this court, Graham argues that "[f]rom the date of the signed Settlement Agreement to the date of trial, [Prescott] never sent a written request to [Graham] to sign a quitclaim deed for the properties located on W Street, Vine Street, Woodstock Avenue or Baldwin." Brief for appellant at 7. She further contends that Prescott "failed to produce any evidence to support . . . that he did in fact request [Graham] to sign over her interests," and that Prescott testified "there was no reason why he could not have prepared the necessary documents for "Graham to sign to transfer her property interests to [him]." *Id*. at 12. Regardless of why the documents were not executed, the evidence demonstrated that Graham failed to transfer her interest in certain real estate and business assets as she was required to under the agreement. Therefore, paragraph 9.A. was not triggered by the time Prescott paid Graham the amounts he owed her in December 2021. As such, Prescott did not owe Graham any additional sum under paragraph 9.B.

Because paragraph 9.B. was not triggered, we need not address Graham's arguments that paragraph 9.B. was a liquidated damages provision rather than an unenforceable penalty provision, even though paragraph 9.B. was labeled "Penalty Payment." See *Yant Construction Co. v. Village of Campbell*, 123 Neb. 360, 243 N.W. 77 (1932) (contract provision for penalty rather than liquidated damages cannot be enforced). See, also, *Stanford Motor Co. v. Westman*, 151 Neb. 850, 39 N.W.2d 841 (1949) (distinguishing liquidated damages from penalty). An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023).

ATTORNEY FEES

Graham contends that the district court erred in failing to award her attorney fees. Her only argument is that she "incurred extensive attorney fees from the frivolous litigation that could have been resolved if [Prescott] fulfilled his end of the agreement or[] paid the . . . $39,000.00 in liquidated damages." Brief for appellant at 14. Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id*. Since we have already determined that court correctly denied Graham most of the relief she requested, we cannot find that the court abused its discretion in declining to award her attorney fees.

CONCLUSION

For the reasons stated above, we affirm the district court's January 30, 2023, order.

AFFIRMED.