IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VERSATILE ROOFING V. HORACEK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

VERSATILE ROOFING, LLC, APPELLANT,

V.

TIM HORACEK, APPELLEE.

Filed October 22, 2024.    No. A-23-950.

Appeal from the District Court for Buffalo County: RYAN C. CARSON, Judge. Affirmed.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen for appellant.

Raquel C. Kemm, of Tye & Rowling, P.C., L.L.O., for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Versatile Roofing, LLC, (Versatile) appeals from the Buffalo County District Court's order granting summary judgment in favor of Tim Horacek and dismissing Versatile's complaint against Horacek for breach of contract. Versatile generally argues that the court erred in: its interpretation of the condition precedent of the contract; disregarding certain evidence contained in an affidavit submitted by Versatile; and finding that there was no genuine issues of material fact to support summary judgment. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

The primary facts of this case are not in dispute. Horacek incurred damage to his roof from a windstorm. Although Horacek requested that his insurance carrier MutualAid eXchange Insurance (MAX) pay for an entire roof replacement, MAX refused on the basis that the windstorm did not cause a total loss requiring a total roof replacement. Instead, MAX offered to pay to replace

half of the roof. Horacek requested proposals from different contractors including Versatile to fix the portion of the roof which MAX had agreed to pay. But rather than provide the requested bid, Versatile proposed to act as an advocate for Horacek to convince MAX to pay for a total roof replacement and then replace the roof with proceeds paid by MAX. Notably, the specific language in Versatile's proposal to Horacek provided that Versatile would "hereby submit specifications and estimates" as follows:

- [Versatile] will do insurance specified repairs for the negotiated RCV Insurance proceeds. [Horacek] is responsible for deductible and any upgrades.
- By signing below, [Versatile] shall be made an advocate/representative on [Horacek's] behalf to the Insurance company. [Versatile] will be able to discuss, correspond, and send/receive directly from the insurance company any documentation regarding the claim.
- If [Versatile] can't get the Insurance carrier to agree to a full roof replacement. This contract will be void and [Horacek] will be released from the contract.

We propose to furnish material and labor - complete in accordance with above specifications for the sum of: (Insurance RCV Allowance).

The agreement also included a penalty clause which provided:

You, the customer, may cancel this binding contract, assuming work has not begun, at any time prior to midnight of the third business day after the date of this transaction. Cancellations occurring after the third day will incur a charge of thirty percent of the full contract amount.

Versatile's representative, Jordan Johnson, and Horacek signed the proposal on June 3, 2022. About a week after Horacek and Versatile executed the proposal, Horacek reached out to Versatile and spoke with Johnson, who indicated that he had been unable to get MAX to approve a full roof replacement. Johnson informed Horacek that Versatile had contacted the insurance adjuster but that the adjuster "would not change his mind on replacing the whole roof and stood by his appraisal of half a roof."

On June 15, 2022, before any work had begun on Horacek's roof, his roof sustained further damage following a hailstorm. Horacek filed a second insurance claim and MAX placed the first claim on hold pending further inspection. Versatile completed its own subsequent inspection of Horacek's roof on June 17. MAX performed its subsequent inspection on June 23.

In July 2022, MAX terminated the first insurance claim for the wind damage and opened a subsequent claim under a new claim number for the hail damage to Horacek's roof. MAX eventually approved the second claim and agreed to pay for a total roof replacement. Versatile submitted a second proposal to Horacek for the roof replacement, but Horacek rejected the proposal and hired a different roofer to replace his roof.

On August 24, 2022, Versatile filed a complaint against Horacek alleging that Horacek had breached their original contract by hiring another contractor to replace his roof and requesting the court award Versatile liquidated damages as agreed by the parties. Versatile asserted that the proposal provided Horacek with a 3-day grace period to withdraw from the contract, but that cancellation after the grace period would result in liquidated damages of 30 percent of the full

contract amount. Versatile alleged that because Horacek did not cancel the contract before the 3-day grace period expired, the court should award Versatile $10,564.32 in liquidated damages as provided in the contract. Horacek responded by denying he breached the contract, alleging that the contract became void when Versatile failed to obtain approval from MAX to cover a full roof replacement, which rendered the contract void by its express terms, and that MAX's eventual approval of a total roof replacement was the result of a subsequent hailstorm.

On August 23, 2023, Horacek filed a motion for summary judgment alleging that the undisputed facts demonstrated that Versatile failed to meet the express condition in the contract and that under the terms of the contract, Horacek was released from his obligation to perform. Through affidavits submitted into evidence, in addition to the facts as set forth above, Horacek asserted that the full roof replacement approval did not result from Versatile's actions, but rather because of a subsequent hailstorm. Specifically, in reference to MAX's approval of the total roof replacement, Horacek submitted the affidavit of Jeremy Shewmaker, the claims adjuster for MAX insurance, who asserted, "I would not have been persuaded to approve a full roof replacement based on the damage to the roof at the time [of the first loss], after receiving the engineers' report, as I would defer to their expertise in the matter." Shewmaker's affidavit further asserted that he closed out the first claim for wind damage to the roof, opened a subsequent claim for hail damage, and approved a full roof replacement on the second claim "based on the subsequent hail damage." In furtherance of that approval, Shewmaker asserted:

> I do not have any record of ever receiving a bid or speaking to any representatives from [Versatile] for either of [Horacek's] roofing claims in 2022.

> The full roof replacement approved in July 2022 was the result of hail damage present after the second roofing claim in 2022 that was not present at the time of my decision for MAX Insurance to only cover a half roof replacement under the first insurance claim.

To rebut this evidence, Versatile offered Johnson's affidavit, which provided in pertinent part that following the June 15, 2022, hailstorm, he completed a second inspection of Horacek's roof. He stated that, "As a result of my June 17, 2022[,] inspection, I was able to get [MAX] to authorize a full roof replacement. Prior to that June 17, 2022[,] inspection, [MAX] only pre-authorized a half roof replacement."

Following the hearing, the district court granted Horacek's motion for summary judgment and dismissed Versatile's complaint with prejudice. Specifically, the court's order found:

> There is no dispute that the June 3, 2022[,] proposal expressly provided that if Versatile . . . could not arrange a full roof replacement with the carrier, the contract would be "null and void and . . . Horacek will be released from the contract." Versatile also does not dispute that its employee . . . Johnson represented to [Horacek] approximately one week after the execution of the proposal that the insurance carrier would not change its mind and stood by the appraisal for half of the roof. According to the plain terms of the agreement then, the contract became "null and void" and was terminated at that time. See *Coffey v. Planet Grp., Inc.*, 287 Neb. 834, 841, 845 N.W.2d 255, 262 (2014) ("When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be

accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them").

Once this showing was made, the burden shifted to Versatile to present evidence showing a genuine issue of material fact exists concerning this issue. But . . . Johnson did not dispute or address in his affidavit his representation to [Horacek] that [MAX] rejected a full roof replacement approximately one week after his proposal. Moreover, he affirmatively acknowledged that prior to his later June 17, 2022[,] inspection, "[MAX] only pre-authorized a half roof replacement." Exhibit 4 at 6. While . . . Johnson further testified that he was able to "get" the carrier to authorize a full roof replacement after the June 15 [hailstorm], that issue is largely moot as the contract was already terminated as "null and void" by its express terms. "A contract which by its terms has expired is legally defunct, and there is nothing on which an extension agreement may legally operate." *Prop. Sales, Inc. v. Irvington Ice Cream & Frozen Arts, Inc.*, 184 Neb. 17, 19, 165 N.W.2d 78, 79 (1969). The unexpected [hailstorm], which was certainly not within the contemplation of the parties at the time of execution, did not amend or otherwise modify the express terms of the proposal. To continue any legal obligations, the parties could have executed a new proposal, but did not. See *id.* ("To bring the terms of an extinguished contract into renewed existence requires a new contract embodying such terms"). Indeed, . . . Horacek testified that Versatile submitted a new bid proposal after the [hailstorm], which he did not sign. See Exhibit 2 at 14.

And even presuming the contract had not already terminated by its terms, . . . Johnson offered no explanation in his affidavit of the efforts, if any, he made to "get" [MAX] to authorize a full roof replacement, an express requirement under the proposal. While he generally referred to his June 17, 2022[,] inspection, he did not testify or confirm that he ever sent the inspection to [MAX]. The claims adjuster . . . Shewmaker further testified that he has no record of anyone from Versatile contacting him or submitting any bids. While this might appear at first blush to create an issue of fact, the Nebraska Supreme Court has made clear that "unsupported opinions [do] not create a genuine issue of fact for purposes of summary judgment." *Bohling v. Bohling*, 309 Neb. 625, 642, 962 N.W.2d 224, 235 (2021). Without more, . . . Johnson's unsupported opinion that [MAX] authorized a full roof replacement *because* of his inspection does not create a genuine issue of material fact in this matter, especially when there is no evidence the carrier ever received the inspection or spoke with anyone from Versatile.

Versatile has now timely appealed from the district court's order granting summary judgment in favor of Horacek.

## ASSIGNMENTS OF ERROR

Versatile assigns as error, restated and renumbered, that the district court erred in: (1) finding that Johnson's statement that he was able to get MAX to approve a full roof replacement following his second inspection lacked sufficient foundation to be relied upon as evidence; (2) granting Horacek's motion for summary judgment; and (3) finding that the contract was void by its express terms.

STANDARD OF REVIEW

An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Avis Rent A Car Sys. v. McDavid*, 313 Neb. 479, 984 N.W.2d 632 (2023).

The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. *White v. White*, 316 Neb. 616, 6 N.W.3d 204 (2024).

ANALYSIS

Versatile generally assigns and argues in its second and third assignments of error that the court erred in granting Horacek's motion for summary judgment because a question of fact existed as to whether the full roof replacement was approved as a result of Versatile's advocacy efforts. Because we find this issue is dispositive of the case, we will begin our analysis with these assignments of error.

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Weber v. North Loup River Pub. Power*, 288 Neb. 959, 854 N.W.2d 263 (2014). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *White v. White*, 316 Neb. 616, 6 N.W.3d 204 (2024).

Here, the parties do not dispute that the contract created a condition precedent to Horacek's obligation to perform thereunder. Rather, the parties dispute whether the condition precedent was satisfied by Versatile, which triggered Horacek's obligation to perform his duty under the contract. More specifically, Versatile argues there was a disputed issue of material fact as to whether MAX's ultimate approval of a full roof replacement was a result of Versatile's advocacy efforts which should have precluded summary judgment here.

In reviewing the record, there is no dispute that following the windstorm that damaged Horacek's roof, MAX refused to approve a full roof replacement. There is also no dispute that following this determination, Horacek retained Versatile to act as his advocate for the purpose of convincing MAX to change its coverage position regarding the loss occasioned by the windstorm. As it relates to its advocacy role, the contract specifically provided that "[i]f [Versatile] can't get [MAX] to agree to a full roof replacement. This contract will be void and Tim Horacek will be released from the contract."

There is no dispute that approximately 1 week following Versatile and Horacek's execution of the contract, Horacek communicated with Johnson and learned that notwithstanding Versatile's efforts, MAX refused to change their coverage position. As it relates to that fact, the district court found that the conversation between Horacek and Johnson regarding MAX's refusal to change its position rendered the contract void by its terms. Versatile takes issue with that finding, arguing there was no specific timing provision in the contract and Versatile was entitled to a reasonable period of time to satisfy the condition. Versatile argues that after Johnson's initial communication

- 5 -

with Horacek and the subsequent hailstorm, Versatile was at least involved with MAX's decision to cover a total roof replacement, which satisfied the condition precedent, or at a minimum, Johnson's attestation that he was able to "get" MAX to authorize a full roof replacement created a factual dispute as to whether Versatile satisfied its condition precedent thereby entitling Versatile to a trial on the issue. We disagree.

There is no question that Horacek retained Versatile to act as an advocate to convince MAX to change its position following the windstorm regarding only authorizing a partial roof replacement. There is also no question that Versatile's failure to do so would result in a void contract. But in addition to Johnson's communication that Versatile had failed in its efforts to convince MAX to change its coverage position prior to the hailstorm, there was no dispute that there was a subsequent hailstorm that changed the condition of the roof. There is no dispute that following the hailstorm, Horacek opened another claim for full roof replacement value, that MAX opened a second claim related to the hailstorm and closed the first claim related to the windstorm, and that MAX ultimately agreed to cover the full replacement value of the roof following the hailstorm.

In *Turbines Ltd. v. Transupport, Inc.*, 19 Neb. App. 485, 808 N.W.2d 643 (2012), *affirmed*, 285 Neb. 129, 825 N.W.2d 767 (2013), this court discussed the doctrine of "supervening frustration" from the Restatement (Second) of Contracts § 265. That section provides:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

We then stated, "In the Restatement's comment *a.* to § 265, the 'rationale' is explained as '[t]his section deals with the problem that arises when a change in circumstances makes one party's performance virtually worthless to the other. . . .'" *Turbines Ltd. v. Transupport, Inc.*, 19 Neb. App. at 501, 808 N.W.2d at 655. We find that the principle articulated in the "frustration of purpose" doctrine is applicable here, at least in part. As we stated above, Versatile was retained by Horacek to advocate on Horacek's behalf and get MAX to change its coverage position on the scope of the roof replacement vis-à-vis the windstorm. And, as indicated by Johnson, Versatile failed to succeed in convincing MAX to approve a total roof replacement. However, after a subsequent hailstorm occurred, the principal purpose of Versatile's and Horacek's contract became frustrated in that there was no longer a need to advocate for MAX to change its position governing the extent of the damage from the windstorm. That is to say, following the subsequent hailstorm, with the original purpose for which Horacek retained Versatile now frustrated, Versatile could no longer satisfy the condition for which the contract was made. With the condition no longer satisfiable, the contract became void by its own terms. Thus, although our reasoning differs somewhat from the district court's, we find that the material facts are not in dispute. That because Versatile failed to satisfy the condition precedent for Horacek's performance and the principal purpose of the contract became frustrated by the hailstorm, by its own terms, the contract became void. We find this result consistent with Versatile's own understanding of the contract because, following the hailstorm, Versatile provided Horacek with a new proposal. Accordingly, we find that the district court did not err in granting summary judgment in favor of Horacek.

In sum, we find that the undisputed material facts on this record reflect that the contract between Versatile and Horacek was rendered void due to its failure to get MAX to change its position regarding a total roof replacement prior to the subsequent hailstorm. Because of this determination, we need not address Versatile's first assignment of error that Johnson's efforts following the hailstorm created a material issue of fact which should have precluded summary judgment. See *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

CONCLUSION

For the reasons stated above, we affirm.

AFFIRMED.