Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

Yvonne M. White, formerly known as Yvonne M. Gubser, appellee, v. Jamison Patrick White and Ryan Howard White, Copersonal Representatives of the Estate of Leonard P. White, deceased, appellants.

___ N.W.3d ___

Filed May 17, 2024.    No. S-22-024.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

2. **____: ____.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

3. **Judgments: Appeal and Error.** In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong. After a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.

4. **Contracts: Judgments: Appeal and Error.** The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.

5. **Judgments: Appeal and Error.** An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning.

6. **____: ____.** An appellate court has an obligation to resolve questions of law independently of the conclusion reached by the trial court.

7. **Decedents' Estates: Wills: Contracts: Breach of Contract.** The effect of a valid contract for wills is not to create a cause of action against the decedent's estate, but instead is to create a cause of action for breach of contract.

8. **Antenuptial Agreements.** Premarital agreements are contracts made in contemplation of marriage.

9. \_\_\_\_. As a contract, a premarital agreement is governed by the same principles that are applicable to other contracts, but is subject to the particular statutory requirement that the premarital agreement must be based on fair disclosure.

10. **Contracts: Intent.** When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract.

Petition for further review from the Court of Appeals, MOORE, RIEDMANN, and BISHOP, Judges, on appeal thereto from the District Court for Washington County, JOHN E. SAMSON, Judge. Judgment of Court of Appeals affirmed.

Perry A. Pirsch, of Pirsch Legal Services, P.C., L.L.O., for appellants.

Brent M. Kuhn and Haley L. Cannon, of Brent Kuhn Law, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

## I. INTRODUCTION

This appeal involves a dispute between a decedent's wife and the copersonal representatives of the decedent's estate over the ownership of $100,000 and a camper under the terms of a premarital agreement. The district court for Washington County, Nebraska, awarded the decedent's wife the $100,000 and the camper, and the Nebraska Court of Appeals affirmed. On further review, the copersonal representatives argue that the decedent's wife was barred from receiving either asset

because she failed to timely file a claim against the estate, as required by Neb. Rev. Stat. § 30-2485 (Reissue 2016). They also argue that the camper was the decedent's separate property under the premarital agreement. Although our reasoning differs from that of the Court of Appeals, we affirm its decision.

## II. BACKGROUND

### 1. Premarital Agreement

Yvonne M. White, formerly known as Yvonne M. Gubser, and Leonard P. White (Lenny) executed a premarital agreement in September 2016 and married approximately 2 weeks later.

Article 1 of the premarital agreement regarded Yvonne's and Lenny's separate property. Provision 1.1 defined "separate property" as "the assets and liabilities of the parties identified in [the agreement]," along with other types of assets not at issue here. Provision 1.2 of the agreement dealt with the rights of the parties retained in their separate property and stated that the parties each "individually shall have and retain all rights in and with respect to [their] own separate property" and that they each retained the "absolute and unrestricted right to manage, dispose of, or otherwise deal with such separate property in any manner whatsoever." Provision 1.3 dealt with the identification of the separate property of the parties and similarly provided that each party is "the sole owner of, with absolute and unlimited inter vivos and testamentary rights of control, management, use, disposition, appointment and other exercise of ownership over" her or his separate property. Provision 1.4 stated the parties' intention for their separate property to not be jointly owned and acquired by the other "by virtue of marriage, survivorship or operation of law."

Article 2 of the premarital agreement regarded Yvonne and Lenny's marital property. Provision 2.1 defined "marital property" as "all property herein after acquired by the parties," except for the separate property as defined in the agreement. Provision 2.2 dealt with "personal and household articles,"

which was stated to include "all articles of personal and household use . . . of every kind and description and wherever located, such as, by way of illustration . . . motor vehicles, boats, [and] sports equipment," among other items. The provision went on to state that "[u]nless otherwise specifically agreed to by the parties at the time of purchase," all such articles "later acquired by Yvonne and Lenny shall be deemed to be jointly owned, with full rights of survivorship."

Article 4 of the premarital agreement was titled "Provisions on Death." Provision 4.2 was a "[n]on-[d]iscretionary [p]rovision[]," which stated that "[i]n the event of Lenny's death, and if Yvonne survives him . . . Yvonne shall receive [$100,000] from Lenny's estate (and this provision shall be treated as a contract to make a Will as described in Neb. Rev. Stat. § 30-2351)."

Attached to the agreement were two exhibits, one from Yvonne and the other from Lenny, which listed the separate property of each party existing at the time of the premarital agreement's execution. As is relevant to this appeal, no motor vehicles were listed as the separate property of either party.

## 2. Application for Informal Probate and Appointment as Representatives

Lenny died in October 2018. In March 2019, Lenny's two sons, Jamison Patrick White and Ryan Howard White, filed an application in the county court for Washington County for the informal probate of Lenny's will and to be appointed as copersonal representatives of his estate. Attached to their application was a copy of Yvonne and Lenny's premarital agreement, along with a copy of Lenny's will that was executed in 2006. Their application also stated that Lenny was married to Yvonne at the time of his death, that the premarital agreement included provisions Lenny made for Yvonne's benefit if he predeceased her, and that the agreement was unrevoked and remained in full force and effect at the time of Lenny's death.

Jamison and Ryan's application was granted, and a notice to creditors was published in March 2019, directing claims against Lenny's estate to be filed by a specified date 2 months later or be forever barred. The copersonal representatives subsequently filed an inventory with the court that showed no jointly owned property between Yvonne and Lenny and listed a "2015 Cyclone 4000 Fifth Wheel Camper" as an asset of Lenny's estate.

### 3. Yvonne's Complaint

Thereafter, in September 2019, Yvonne filed a complaint against Jamison and Ryan in their capacity as copersonal representatives of Lenny's estate, alleging that the estate was subject to probate; that it had failed, refused, or neglected to pay her the $100,000 that was owed under the terms of the premarital agreement; and that it had wrongfully claimed ownership of the camper. According to Yvonne, this constituted a material breach of the premarital agreement. Jamison and Ryan moved to dismiss Yvonne's complaint in the district court for lack of jurisdiction.

No order on the motion to dismiss appears in the record, but Jamison and Ryan subsequently filed an answer, alleging, in relevant part, that Yvonne failed to make a timely, valid claim against the estate to enforce the premarital agreement and that the camper did not belong to Yvonne under the terms of the premarital agreement. Yvonne replied that Jamison and Ryan were precluded from denying her claims, because their initial application filed in the probate proceeding attached a copy of and acknowledged the validity of the premarital agreement, which provided for her ownership of the property. Both parties moved for summary judgment, and the probate records were admitted into evidence.

### 4. District Court Orders

#### (a) Summary Judgment

After a hearing, the district court granted summary judgment in favor of Yvonne in the amount of $100,000. In doing so,

the court found that because Jamison and Ryan's application in the county court probate proceedings included the statements about the premarital agreement, and further attached to the application a copy of the premarital agreement itself, they had judicially admitted that the premarital agreement was unrevoked and remained in full force and effect at the time of Lenny's death. As a result, the district court found as a matter of law that Jamison and Ryan had "waived the necessity of [Yvonne's] filing a claim in the probate estate" and that Yvonne's claim "was timely filed and not barred by any applicable statute of limitations."

As to the ownership of the camper, however, the district court found that there were genuine issues of material fact and denied the parties' competing motions for summary judgment.

(b) Trial

The relevant testimony at the bench trial related to the camper will be introduced and summarized in our analysis of the parties' arguments. Following the trial, the district court entered an order finding that "from the four corners" of the premarital agreement, Yvonne was the owner of the camper. Specifically, under article 2 of the premarital agreement, the court considered the camper to be a "personal article" that Yvonne jointly owned with Lenny with full rights of survivorship. The district court reiterated in its written order that Yvonne's claim against the estate was timely, because Jamison and Ryan "waived the necessity of [Yvonne's] filing a claim in the probate estate by virtue of the terms of" their application for informal probate.

Jamison and Ryan appealed to the Court of Appeals.

5. Decision of the Court of Appeals

In a published opinion, the Court of Appeals affirmed the judgment of the district court.[1] As to Yvonne's entitlement

---

[1] *White v. White*, 31 Neb. App. 691, 988 N.W.2d 207 (2023).

to the payment of $100,000, the majority of the court first assumed, without deciding, that her complaint against Lenny's estate for the $100,000 was a claim subject to § 30-2485. However, the majority held that Yvonne's claim was not barred according to the requirements of § 30-2485 for the timely filing of a claim. The appellate court relied on our decision in *In re Estate of Giventer*[2] to find that the actions of Jamison and Ryan in the probate proceedings below were an "acknowledgment of a valid claim" by Yvonne and therefore relieved her of complying with said filing requirements.[3]

The majority of the court further found that Yvonne was entitled to the camper because the premarital agreement unambiguously provided that "personal and household articles" acquired after the marriage, including motor vehicles, would be deemed jointly owned with full rights of survivorship unless the parties specifically agreed otherwise at the time of purchase, and there was no evidence adduced to that effect.[4] As to Jamison and Ryan's argument that the district court erred in failing to order Yvonne to reimburse the estate for certain costs that the estate allegedly paid in connection with the camper, the majority did not address that argument because it was not specifically assigned as error in Jamison and Ryan's brief on appeal.[5]

The concurring opinion of the Court of Appeals agreed with the affirmance of both of the district court's awards to Yvonne but would not have found that Jamison and Ryan's actions in the probate proceedings satisfied the filing requirement for a claim under § 30-2485.[6] Instead, the concurring judge would have found that Yvonne's suit for the payment

---

[2] *In re Estate of Giventer*, 310 Neb. 39, 964 N.W.2d 234 (2021).

[3] *White, supra* note 1, 31 Neb. App. at 698, 988 N.W.2d at 213.

[4] *Id.* at 700, 988 N.W.2d at 214.

[5] See *White, supra* note 1.

[6] See *id.*

of the $100,000 and the ownership of the camper did not constitute a "claim" against the estate, but, rather, that she was a beneficiary of the estate entitled to the assets she sought under a breach of contract theory according to the terms of the premarital agreement.[7]

We granted Jamison and Ryan's petition for further review.

## III. ASSIGNMENTS OF ERROR

Jamison and Ryan assign, restated, that the Court of Appeals erred in (1) affirming the district court's grant of summary judgment and award of $100,000 in Yvonne's favor and (2) affirming the district court's award of the camper to Yvonne.

## IV. STANDARD OF REVIEW

[1] An appellate court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[8]

[2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[9]

[3] In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.[10] After a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the

---

[7] See *id.*

[8] *Slama v. Slama*, 313 Neb. 836, 987 N.W.2d 257 (2023).

[9] *Sparks v. Mach*, 314 Neb. 724, 993 N.W.2d 119 (2023).

[10] *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021).

successful party and resolves evidentiary conflicts in favor of the successful party.[11]

[4] The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.[12]

## V. ANALYSIS

Jamison and Ryan first assign that the Court of Appeals erred in affirming the district court's grant of summary judgment and award of $100,000 in Yvonne's favor. They argue that their application for informal probate of Lenny's estate did not constitute an "acknowledgment of a valid claim held by Yvonne against the estate for $100,000" and did not relieve Yvonne of complying with the requirements stated in § 30-2485 for timely filing a claim against Lenny's estate, as the Court of Appeals found.[13]

[5] That argument assumes that § 30-2485, which is commonly referred to as the "nonclaim statute," applied to Yvonne's suit. We disagree with that premise for the reasons explained below. That being said, we nevertheless find no error in the Court of Appeals' decision to affirm the district court's award of the $100,000 payment to Yvonne. Although our reasoning differs from that of the Court of Appeals, an appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning.[14]

### 1. NONCLAIM STATUTE NOT APPLICABLE

At the outset of its majority opinion, the Court of Appeals assumed, without deciding, that Yvonne's suit in the district

---

[11] *Id.*

[12] *Slama, supra* note 8.

[13] *White, supra* note 1, 31 Neb. App. at 698, 988 N.W.2d at 213.

[14] *Schaeffer v. Frakes*, 313 Neb. 337, 984 N.W.2d 290 (2023).

court was the assertion of a claim as defined in Neb. Rev. Stat. § 30-2209(4) (Reissue 2016) of the Nebraska Probate Code (NPC) that was subject to the nonclaim statute.[15] Because the parties proceeded in the district court under the assumption that it was a claim, and the statute's applicability was never directly addressed by the district court, the Court of Appeals did not find it necessary to independently decide whether the nonclaim statute applied to Yvonne's suit.[16]

[6] In contrast, we find that the issue of whether Yvonne's suit was bound by the nonclaim statute presents a question of law that needs to be addressed. An appellate court has an obligation to address and resolve such questions of law independently of the conclusion reached by the trial court.[17] To explain why the nonclaim statute does not apply to Yvonne's suit, we briefly review that statute and its requirements.

Under the NPC, creditors' claims in probate proceedings must be brought within the time limitations set forth in the nonclaim statute.[18] In § 30-2209(4), the NPC defines a "claim," in relevant part, as "liabilities of the decedent or protected person whether arising in contract, in tort or otherwise." A claim does not include, among other things, "demands or disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate."[19]

As relevant to this appeal, the nonclaim statute provides that a qualifying claim against a decedent's estate which arises at or after the death of the decedent must be presented within 4 months after it arises.[20] We have consistently held that the requirements of the nonclaim statute are mandatory, and where a claim is not filed within the applicable time

---

[15] *White, supra* note 1.

[16] *Id.*

[17] See *Sparks, supra* note 9.

[18] See *In re Estate of Giventer, supra* note 2.

[19] § 30-2209(4).

[20] § 30-2485(b)(2).

provided in the statute, absent an excuse for the delay or relief granted, it is forever barred.[21] We have also consistently held that "mere notice" of a claim against a decedent's estate fails to satisfy the requirement in Neb. Rev. Stat. § 30-2486 (Reissue 2016) of sufficiently filing or presenting a claim.[22] We have further consistently held that "an administrator cannot waive the defense of nonclaim to the prejudice of the estate" either by agreement with the claimant or by neglecting to plead such a defense.[23]

Here, the approach adopted by the majority of the Court of Appeals was that "the affirmative act by the copersonal representatives of filing in the probate proceeding a copy of the premarital agreement and an attestation that it remained in effect" went "above and beyond notice of a potential claim" and was an "acknowledgment of a valid claim" that relieved Yvonne of complying with the time limitations for filing a claim against Lenny's estate.[24] We view this approach as conflicting with our precedents stated above.

Even so, for the nonclaim statute and its limitations on the presentation of claims to apply to Yvonne's suit, the

---

[21] See, e.g., *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021), *modified on denial of rehearing* 310 Neb. 389, 966 N.W.2d 268; *In re Estate of Giventer, supra* note 2; *In re Estate of Masopust*, 232 Neb. 936, 443 N.W.2d 274 (1989); *J.J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. 580, 428 N.W.2d 185 (1988).

[22] See, e.g., *In re Estate of Lakin, supra* note 21; *In re Estate of Giventer, supra* note 2; *In re Estate of Lorenz*, 292 Neb. 543, 873 N.W.2d 396 (2016); *J.R. Simplot Co. v. Jelinek*, 275 Neb. 548, 748 N.W.2d 17 (2008); *J.J. Schaefer Livestock Hauling, supra* note 21; *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988); *Peterson v. Gering Irr. Dist.*, 219 Neb. 281, 363 N.W.2d 145 (1985); *In re Estate of Feuerhelm*, 215 Neb. 872, 341 N.W.2d 342 (1983).

[23] *In re Estate of Golden*, 120 Neb. 226, 230, 231 N.W. 833, 836 (1930). See, e.g., *In re Estate of Lakin, supra* note 21; *In re Estate of Masopust, supra* note 21; *Storm v. Cluck*, 168 Neb. 13, 95 N.W.2d 161 (1959); *Breuer v. Cassidy*, 155 Neb. 836, 54 N.W.2d 75 (1952); *Estate of Fitzgerald v. First Nat. Bank of Chariton*, 64 Neb. 260, 89 N.W. 813 (1902).

[24] *White, supra* note 1, 31 Neb. App. at 698, 988 N.W.2d at 213.

underlying cause of action against the decedent's estate must qualify as a "claim."[25] In our view, Yvonne's suit in the district court did not qualify as a "claim" as defined by § 30-2209(4), in part because there were no liabilities of the decedent or the decedent's estate at issue for either the $100,000 or the camper. Instead, according to Yvonne and Lenny's premarital agreement, the suit for the $100,000 was a cause of action against the estate for breach of contract, and the suit for the camper was a cause of action involving disputed title of property allegedly belonging to the decedent. We further explain this determination by reviewing first the suit for the $100,000, then the suit for the camper.

### (a) $100,000

As to the $100,000, Yvonne's complaint alleged that under the premarital agreement, she was entitled to receive that sum from the estate. As noted above, the relevant section of the premarital agreement was a "[n]on-[d]iscretionary [p]rovision[]," stating that if Yvonne survived Lenny, she "shall receive [$100,000] from Lenny's estate." The provision then explicitly stated that "this provision shall be treated as a contract to make a Will as described in Neb. Rev. Stat. § 30-2351."

The statute mentioned there, Neb. Rev. Stat. § 30-2351 (Reissue 2016), states that a "contract to make a will" can be established only by: "(1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract." Satisfying one of these three subsections is the only way to prove the existence of a contract to make a will.[26]

In the present case, no one appears to dispute that the premarital agreement was a writing signed by Lenny evidencing a contract with Yvonne or that the agreement called for Yvonne to receive $100,000 if she survived Lenny. Provision

---

[25] See, generally, § 30-2485.

[26] *Johnson v. Anderson*, 278 Neb. 500, 771 N.W.2d 565 (2009).

4.2 of the premarital agreement thus satisfies the requirements of § 30-2351 for the establishment of a valid contract to make a will, and Yvonne was thus entitled to the $100,000 from Lenny's estate.

[7] With that said, the question of whether Yvonne's suit seeking the payment of the $100,000 from Lenny's estate was time barred according to the nonclaim statute is easily answered: No, it was not. This determination is predicated on our previous holding that the effect of a valid contract for wills is not to create a cause of action against the decedent's estate, but instead is to create a cause of action for breach of contract.[27] As a result, Yvonne was a beneficiary of the estate, not a creditor or a claimant against it. Her breach of contract suit for the payment of the $100,000 was not the assertion of a "claim" as defined by § 30-2209(4) and was not subject to the nonclaim statute's requirements for the timely filing of a claim.

Jamison and Ryan do not dispute that they never paid Yvonne the $100,000 from the estate, despite acknowledging that the premarital agreement was unrevoked and remained in full force and effect at the time of Lenny's death. It is therefore apparent that Jamison and Ryan, in their capacity as copersonal representatives of Lenny's estate, are liable for breach of contract. And because Yvonne's suit was for breach of contract, it was not barred for being untimely filed, as Jamison and Ryan argue.

By statute, an action for breach of written contract must be brought within 5 years of the cause of action.[28] Lenny died in 2018, the copersonal representatives of his estate were appointed in March 2019, and Yvonne brought her suit against the copersonal representatives in September 2019.

---

[27] *In re Estate of Stuchlik*, 289 Neb. 673, 857 N.W.2d 57 (2014) (citing *Pruss v. Pruss*, 245 Neb. 521, 514 N.W.2d 335 (1994)), *modified on denial of rehearing* 290 Neb. 392, 861 N.W.2d 682 (2015). See, also, *Philp v. First Nat. Bank & Trust Co.*, 212 Neb. 791, 326 N.W.2d 48 (1982).

[28] See Neb. Rev. Stat. § 25-205(1) (Reissue 2016).

### (b) Camper

Yvonne's suit for the camper was likewise not a claim subject to the nonclaim statute and was not barred from being asserted for being untimely filed; it was instead a dispute regarding the title of a specific asset allegedly belonging to Lenny's estate.

As mentioned, § 30-2209(4) explicitly excludes "disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate" from the definition of a "claim" for purposes of the NPC. We have also previously stated that an action involving disputed title of property allegedly belonging to a decedent and included in the decedent's estate is not a "claim" as defined by § 30-2209(4).[29] Yvonne's suit asserted that the camper's title belonged to her under the terms of the premarital agreement, whereas Jamison and Ryan asserted that the camper was an asset of Lenny's estate. The suit for the camper thus involved a dispute not subject to the nonclaim statute.

### 2. Interpretation of Premarital Agreement as to Camper

Jamison and Ryan next assign that the Court of Appeals erred in interpreting the terms of the premarital agreement to award Yvonne the camper. They argue that the court erred in relying on the terms of article 2, provision 2.2, of the premarital agreement, as well as the testimony of Yvonne at the bench trial, to find that Yvonne and Lenny owned the camper as a joint asset. Instead, Jamison and Ryan assert that the court failed to properly consider other provisions of the premarital agreement related to the separate property of Yvonne and Lenny that was brought into the marriage, as well as the testimony at the trial, which they argue showed that Lenny did not intend for the camper to be a marital asset. We disagree

---

[29] See, *In re Estate of Chaney*, 232 Neb. 121, 439 N.W.2d 764 (1989); *In re Estate of Severns*, 217 Neb. 803, 352 N.W.2d 865 (1984). See, also, *Eggers v. Rittscher*, 247 Neb. 648, 529 N.W.2d 741 (1995).

and find no error in affirming the district court's award of the camper to Yvonne according to the premarital agreement.

[8-10] Premarital agreements are contracts made in contemplation of marriage.[30] We have further said that as a contract, a premarital agreement is governed by the same principles that are applicable to other contracts, but is subject to the particular statutory requirement that the premarital agreement must be based on fair disclosure.[31] In interpreting contracts, the court as a matter of law must first determine whether the contract is ambiguous.[32] When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.[33] In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract.[34]

In this case, provision 2.2 of the premarital agreement stated in relevant part that, as used in the agreement, the term "personal and household articles" included "all articles of personal and household use . . . of every kind and description and wherever located, such as, by way of illustration, . . . *motor vehicles*, boats, [and] sports equipment." (Emphasis supplied.) The provision further stated that "[u]nless otherwise specifically agreed to by the parties at the time of purchase, all personal and household articles later acquired by Yvonne and Lenny shall be deemed to be jointly owned, with full rights of survivorship."

We agree with Yvonne that the camper falls within the language of provision 2.2 of the premarital agreement. The terms of that provision are clear, so we accord them their

---

[30] *In re Estate of McConnell*, 28 Neb. App. 303, 943 N.W.2d 722 (2020). See *Mamot v. Mamot*, 283 Neb. 659, 813 N.W.2d 440 (2012).

[31] *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022).

[32] *Wintroub v. Nationstar Mortgage*, 303 Neb. 15, 927 N.W.2d 19 (2019).

[33] *Slama, supra* note 8.

[34] *Id.*

plain and ordinary meaning. In particular, the provision prescribed that personal and household items acquired by Yvonne and Lenny after marriage were deemed to be jointly owned with full rights of survivorship unless otherwise agreed to by the parties. "[P]ersonal and household articles" was defined to include, among other things, motor vehicles and boats. A camper is arguably a motor vehicle under the plain meaning of that term.[35] But, even if not seen as such, a camper is, at a minimum, similar to motor vehicles and boats. Further, it is uncontroverted that the camper here was acquired after Yvonne and Lenny were married. And Yvonne testified at the trial that she was not aware of any agreement with Lenny at the time of the camper's purchase that it was to be treated as his separate property, nor did she "execute[] any document after the premarital agreement that said anything like that." As such, we are of the view that the camper should be deemed jointly owned with full rights of survivorship.

Jamison and Ryan's arguments on appeal do not persuade us otherwise. First, they argue that the camper was not intended to be a joint asset, based on the language in the premarital agreement related to Yvonne and Lenny's separate property existing at the time of their marriage, which is provided above, as well as on certain testimony presented at the trial. Specifically, the relevant testimony was that Lenny owned a different "Bighorn" camper (Bighorn) from before he and Yvonne were married but that sometime after they were married, Lenny traded in the Bighorn to pay for a portion of the price of the camper at issue here. Lenny then paid for the remainder of the camper's price with a check from a home equity line of credit from his bank and titled the camper solely in his name using Jamison's address.

These facts do not render the camper as Lenny's separate property, as Jamison and Ryan suggest. The other testimony

---

[35] See, *State v. Sotelo*, 197 Neb. 334, 248 N.W.2d 767 (1977); *State v. Wood*, 195 Neb. 353, 238 N.W.2d 226 (1976); *State v. Holmberg*, 194 Neb. 337, 231 N.W.2d 672 (1975).

at the trial nevertheless established that the camper at issue was acquired after Yvonne and Lenny were married, and there is no evidence in the record of an agreement between them that the camper was intended to be Lenny's separate property at the time of its purchase. Further, the Bighorn that Jamison and Ryan attribute significance to was not listed as Lenny's separate property at the time of the premarital agreement's execution.

Jamison and Ryan also argue that "personal and household articles" in provision 2.2 of the premarital agreement was intended to apply only to items such as an air fryer and a bedspread that Yvonne testified about, rather than the camper. This argument fails to acknowledge that "motor vehicles" were expressly included in the premarital agreement's definition of personal and household articles. Based on all these facts, the camper at issue here was a joint asset under the premarital agreement, and the other provisions in the agreement related to the separate property are immaterial here. Jamison and Ryan's statement on appeal that "[Lenny] didn't intend his Camper as a marital asset" at the time of its purchase is a mere assertion that is unsubstantiated by the record.[36]

As to Jamison and Ryan's additional argument that the district court erred in failing to order Yvonne to reimburse the estate for certain costs that the estate allegedly paid in connection with the camper, we need not address that argument here. Although this argument was made in their brief before the Court of Appeals, it was not assigned as an error, so the Court of Appeals was correct to not opine on it.[37] To allow Jamison and Ryan to renew the same argument here on further review in support of a different assignment of error would defeat the purpose of this rule.

---

[36] Brief for appellants in support of petition for further review at 21.

[37] See *State v. Clark*, 315 Neb. 736, 754, 1 N.W.3d 487, 502 (2024) ("alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court").

## VI. CONCLUSION

Our conclusion is based on somewhat different reasoning than that of the Court of Appeals, but we determine that its decision affirming the district court's judgment was correct. We therefore affirm.

Affirmed.