Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/01/2025 09:09 AM CDT

- 716 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

In re Estate of Brenda J. Farrington, deceased.
Teresa L. Hauck, Personal Representative of the
Estate of Brenda J. Farrington, appellee,
v. Ramona Farrington, appellant.

___ N.W.3d ___

Filed June 24, 2025.    No. A-24-494.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews a
lower court's grant of summary judgment de novo, viewing the record in
the light most favorable to the nonmoving party and drawing all reason-
able inferences in that party's favor.

2. \_\_\_\_: \_\_\_\_. An appellate court will affirm a lower court's grant of sum-
mary judgment if the pleadings and admitted evidence show that there is
no genuine issue as to any material facts or as to the ultimate inferences
that may be drawn from the facts and that the moving party is entitled to
judgment as a matter of law.

3. **Decedents' Estates: Appeal and Error.** An appeal from the county
court's allowance or disallowance of a claim in probate will be heard as
an appeal from an action at law. In reviewing a judgment of the probate
court in a law action, an appellate court does not reweigh evidence, but
considers the evidence in the light most favorable to the successful party
and resolves evidentiary conflicts in favor of the successful party, who is
entitled to every reasonable inference deducible from the evidence. The
probate court's factual findings have the effect of a verdict and will not
be set aside unless clearly erroneous.

4. **Judgments: Appeal and Error.** On a question of law, an appellate court
is obligated to reach a conclusion independent of the determination
reached by the court below.

5. **Statutes: Appeal and Error.** Statutory interpretation is a question of
law, which an appellate court resolves independently of the trial court.

6. **Decedents' Estates: Claims: Limitations of Actions.** In a probate
action, the question of whether a dispute with the estate is a "claim,"
as that term is defined in Neb. Rev. Stat. § 30-2209(4) (Reissue 2016),

- 717 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

is a question of law that must be addressed before determining whether such claim was timely presented pursuant to Neb. Rev. Stat. § 30-2485 (Reissue 2016).

7. **Decedents' Estates: Claims.** Neb. Rev. Stat. § 30-2209(4) (Reissue 2016) excludes a dispute regarding the title of a house owned by a decedent prior to his or her death from the definition of a claim against an estate.

8. ____: ____. An investment account owned by a decedent prior to his or her death that explicitly provides for named beneficiaries to receive the funds in the account at the time of death is a nonprobate asset, as defined by Neb. Rev. Stat. § 30-2715 (Cum. Supp. 2024), which is separate and apart from a decedent's estate.

Appeal from the County Court for Lancaster County: HOLLY J. PARSLEY, Judge. Vacated and remanded with directions.

Cathy S. Trent-Vilim, John M. Walker, and Ellen K. Geisler, of Lamson, Dugan & Murray, L.L.P., for appellant.

J.L. Spray and Raymond P. Daugherty, of Mattson Ricketts Law Firm, L.L.P., for appellee.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

This appeal involves a dispute between the decedent's step-daughter, Ramona Farrington, and the personal representative of the decedent's estate, Teresa L. Hauck, over the ownership of a residence located in Lancaster County, Nebraska, and the funds in an investment account owned by the decedent prior to her death. Following a hearing, the county court sustained a summary judgment motion filed by Hauck. In its order, the court explained that Ramona filed her claim against the estate out of time, pursuant to the provisions of Neb. Rev. Stat. § 30-2485 (Reissue 2016). As such, the county court determined that the claim was barred. Because we conclude that the disputes over the residence and the investment account

- 718 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

did not constitute claims against the estate subject to the provisions of § 30-2485, we vacate the order of the county court granting Hauck's motion for summary judgment on the basis that Ramona's claims were filed out of time. We remand the cause with directions as set forth below.

## BACKGROUND

Ramona is the daughter of Allen Farrington. When Ramona was a teenager, her father married Brenda J. Farrington. Hauck is Brenda's daughter, and thus, Hauck is Allen's stepdaughter and Ramona's stepsister. Hauck was also a minor child when Brenda and Allen married. As such, Ramona and Hauck grew up together as sisters in the same household.

In January 2016, Allen died. After his death, there was some disagreement between Brenda, Ramona, and Allen's other biological daughter regarding the disposition of his assets. In the months after Allen's death, Ramona and Brenda met with an attorney who was assisting with the distribution of the assets. After this meeting, on June 20, 2016, Brenda wrote a letter to Ramona regarding the division of Allen's assets. As is relevant to this appeal, Brenda discussed in the letter the disposition of the house she and Allen shared: "I want to assure you that I have made provision in my will that you and [Hauck] will split the house upon my death and [Hauck] will be able to purchase your interest following my death. I will not change that provision going forward . . . ." At the close of the June 2016 letter, Brenda wrote:

> Please acknowledge this letter lists the matters we discussed in [the attorney's] office by signing below. Then, please e-mail the signed letter to me with a copy to [the attorney]. I understand that you are waiting for this letter before you will sign the settlement agreement drafted by [the attorney].

Brenda signed the letter, and 2 days later, on June 22, Ramona signed her name under the terms "Reviewed and Accepted."

On June 23, 2016, the day after Ramona indicated that she had reviewed and accepted the terms of Brenda's letter,

- 719 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

Ramona signed a family settlement agreement regarding the division of Allen's assets between Brenda, Ramona, and Allen's other daughter. The majority of the agreement dealt with how to divide "various checks" written to Allen before his death. Ultimately, the value of the checks was distributed equally between Ramona and Allen's other daughter. The agreement also gave Ramona authority to distribute certain personal property acquired by Allen prior to 1987. The agreement provided: "The remainder of Allen Farrington's estate [was to be] distributed to Brenda, as her sole property to do with as she wishes."

Notably, the family settlement agreement was silent regarding the residence of Brenda and Allen, which was the subject of the June 20, 2016, letter. In fact, the agreement did not reference the June 20 letter at all. And, paragraph 12 of the agreement provided in part:

> This Family Settlement Agreement represents a full and complete understanding and agreement among the parties, all of whom are the sole heirs of Allen R. Farrington, deceased, and the Personal Representative of his estate, and full and complete settlement of the estate, with the sole exception of the determination and payment of inheritance tax, which shall be the responsibility of the Personal Representative.

At the time of his death, Allen also owned an investment account that listed Brenda as the primary beneficiary and Ramona as the contingent beneficiary. Upon Allen's death, the proceeds from the investment account were transferred to Brenda, who opened her own investment account. Shortly thereafter, in March 2016, Brenda designated Ramona as a 50-percent beneficiary of her investment account.

On June 27, 2016, Brenda executed her own will. This 2016 will devised the house previously shared by Brenda and Allen "in equal shares" to Ramona and Hauck. The will gave Hauck the right to purchase Ramona's interest in the house for a price equal to the lesser of 50 percent of the 2016 real

- 720 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

estate tax assessed value or the fair market value at the time of Brenda's death. According to the will, the 2016 tax assessed value for the house was $277,600. The will also provided that Ramona would need to pay all expenses related to Hauck's purchase of Ramona's interest in the house, including attorney fees, filing fees, and related costs, and that the purchase must be completed within 12 months of Brenda's death or the gift to Ramona would lapse.

On September 10, 2020, Brenda executed a new will and revoked her 2016 will. Brenda's 2020 will changed the allocation of her and Allen's former residence. This will provided that Hauck was to receive the entirety of the residence. However, Hauck was to pay Ramona the sum of $85,000 from the proceeds of the sale of the residence if Hauck sold it within 5 years of Brenda's death, or earlier if Hauck should refinance the property. If the property was not sold within 5 years of Brenda's death, the will provided that "it [was] my desire that my daughter refinance the property to realize an amount sufficient to pay the $85,000 to my stepdaughter." The will included an explanation that the $85,000 to be paid to Ramona represented 50 percent of the original purchase price of the residence when Brenda and Allen bought the property.

On November 13, 2020, Brenda also changed the beneficiary designations on her investment account. The designation of primary beneficiaries was changed to Hauck and to Brenda's biological son. The only contingent beneficiary listed on the form was Hauck's daughter, Brenda's only grandchild. Ramona was no longer included as either a primary or contingent beneficiary for the account.

Brenda died on March 13, 2022. After her death, Hauck filed estate proceedings and the 2020 will was informally admitted to probate. Hauck was later appointed as personal representative of the estate, according to the terms of the will. Following her appointment, on April 14, Hauck, as personal representative, filed an "Affidavit of Mailing Notice of Informal Probate and Informal Appointment of Personal Representative, and

- 721 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

Notice to Creditors." The affidavit showed notice was mailed to Ramona at her street address in New York, listing apartment "#224." On July 26, Hauck filed a "Supplemental Affidavit of Mailing Notice of Informal Probate and Informal Appointment of Personal Representative, and Notice to Creditors." The supplemental affidavit showed notice was mailed to Ramona at the same street address in New York, but correctly listed "#22A" as her apartment number.

On August 15, 2022, Ramona filed a statement of claim in the estate proceedings. In the statement, Ramona indicated that Brenda had breached an agreement to devise certain of her property to Ramona. In particular, Ramona alleged that as part of the settlement agreement reached with regard to Allen's estate, Brenda promised to award her a one-half interest in the residence Brenda and Allen had shared at the time of Allen's death and one-half of the value of Allen's investment account. Ramona summarized her contentions as follows:

> This claim is made by Ramona . . . ("Claimant"), stepdaughter of [Brenda]. After the death of Allen R. Farrington, [Ramona's] father and [Brenda's] husband, [Ramona and Brenda] entered into certain settlement agreements in connection with Allen Farrington's estate. Under those agreements, [Brenda] agreed to convey certain property to [Ramona], to designate [Ramona] as a one-half beneficiary on an [investment account] that [Brenda] inherited from Allen R. Farrington, and to make provision for [Ramona] in [Brenda's] will. [Brenda] failed to convey the above property to [Ramona], to designate [Ramona] as a one-half beneficiary on the [investment account], and to make provision for [Ramona] in [Brenda's] will as promised.

On October 12, 2022, Hauck filed a notice of disallowance of Ramona's claim. Ramona then filed a petition for allowance of her claim with the county court. In her petition, Ramona defined herself as a creditor of the estate who is an interested person pursuant to Neb. Rev. Stat. § 30-2209(21)

- 722 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

(Reissue 2016). She asked the county court to award her with a "50% interest" in the residence and one-half of the value of the investment account.

After filing her petition, Ramona filed a motion for partial summary judgment. In this motion, she asked that the county court grant her claim for one-half of the interest in Brenda and Allen's residence. Her accompanying brief in support of her motion asserted that Brenda entered into a written contract promising that she would "split" the house between Ramona and Hauck at the time of Brenda's death and would provide for such division in her will. Ramona further asserted that when Brenda altered her will in 2020, she materially breached the agreement to give her a 50-percent interest in the house. Essentially, Ramona asserted that there was no genuine dispute of material fact that Brenda's promise entitled her to the 50-percent interest.

Subsequent to Ramona's filing her motion for partial summary judgment, in February 2024, Hauck also filed a motion for partial summary judgment. In that motion, Hauck alleged that there was insufficient evidence to prove that Ramona had any claim to the funds in Brenda's investment account at the time of her death. In Hauck's brief in support of the motion for partial summary judgment, she asserted that there was simply no evidence, other than Ramona's self-serving statements, that Brenda ever made a promise to name Ramona as a beneficiary of the account. Without such evidence, Hauck asserts, Brenda was free to change the beneficiaries of the investment account at any time prior to her death.

In March 2024, Hauck filed another motion for summary judgment as to Ramona's claim against the estate regarding both the house and the investment account. Hauck asserted that Ramona's claim was not timely filed pursuant to § 30-2485 and, as a result, was barred. Section 30-2485 provides details on when a claim against an estate must be filed, depending on whether the claim arose prior to or after the death of a decedent.

- 723 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

A hearing was held on the parties' motions for summary judgment on April 11, 2024. Both parties offered evidence and provided argument before the court. Ramona reasserted her position that there was no genuine issue of material fact regarding whether Brenda had breached the agreement to "split" the house between Ramona and Hauck at the time of Brenda's death. Because Brenda's 2020 will did not devise a one-half interest in the house to Ramona, she argued that her partial motion for summary judgment should be granted as to this issue.

Ramona also opposed Hauck's motions for summary judgment. She argued that she had presented sufficient evidence of her agreement with Brenda regarding the investment account to survive a motion for summary judgment. In particular, she pointed to the March 2016 form designating her as a primary beneficiary of Brenda's investment account. Ramona contended that this form evidenced Brenda's promise to give her one-half of the value of that account, which comprised the funds from Allen's investment account. Noting the incorrect address placed on the April 14, 2022, affidavit of mailing, she also argued that her claim against the estate was timely made pursuant to § 30-2485 because she did not receive proper notice of Brenda's death until July 2022. She then filed her claim within a month of receiving such notice.

Contrary to Ramona's assertions at the summary judgment hearing, Hauck asserted that Ramona's motion for partial summary judgment regarding the house should be denied because there were genuine issues of material fact that remained to be decided. Specifically, Hauck argued that pursuant to the promise Brenda made in the June 2016 letter to Ramona, the house did not have to be divided equally between Ramona and Hauck. Hauck next asserted that her motion for partial summary judgment regarding the investment account should be granted because Ramona had failed to provide any evidence that there was an agreement between Ramona and Brenda as to the division of the funds in the account at the time of

- 724 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

Brenda's death. Finally, Hauck asserted that Ramona's entire claim against the estate was barred because the claim was not timely made. Hauck argued that Ramona's claim arose at the time of Brenda's death and that, as such, pursuant to § 30-2485(b), she had 4 months from Brenda's death on March 13, 2022, to file her claim.

After the hearing, the county court entered an order granting Hauck's March 2024 motion for summary judgment, concluding that Ramona's claim to the house and to the investment account was barred by the statute of limitations delineated in § 30-2485(b). Specifically, the court found that Ramona's claim arose at the time of Brenda's death on March 13, 2022. Pursuant to § 30-2485(b)(2), claims arising on or after the death of a decedent must be made within 4 months of the decedent's death. As such, Ramona was required to make her claim on or before July 13. However, Ramona filed her statement of claim with Hauck on August 15, more than a month past the filing deadline. Given the court's ruling regarding the claims being time barred, it found the other two motions for summary judgment filed by Ramona and Hauck to be moot.

Ramona appeals from the county court's order here.

ASSIGNMENTS OF ERROR

Ramona assigns, restated and consolidated, three errors on appeal. First, she asserts that the assets in dispute did not involve claims against the estate, or probate assets, so the county court incorrectly applied the statute of limitations contained in § 30-2485. Second, Ramona asserts that even if the assets in dispute involved "claims," or probate assets, the county court erred in determining such claims arose at the time of or after Brenda's death and in applying the 4-month statute of limitations provided in § 30-2485(b). Finally, Ramona asserts that the county court erred in granting Hauck's motion for summary judgment. She argues that the court should have, instead, granted her partial motion for summary judgment, because it was clear from the evidence

- 725 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

that Brenda breached her contract with Ramona regarding the disposition of the residence.

## STANDARD OF REVIEW

[1,2] An appellate court reviews a lower court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *White v. White*, 316 Neb. 616, 6 N.W.3d 204 (2024). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Id*.

[3-5] An appeal from the county court's allowance or disallowance of a claim in probate will be heard as an appeal from an action at law. *In re Estate of Giventer*, 310 Neb. 39, 964 N.W.2d 234 (2021). In reviewing a judgment of the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id*. The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *Id.* On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.* Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. *Id*.

## ANALYSIS

In her petition for allowance of claim, Ramona specifically alleged that she was a creditor of Brenda's estate in that she was to receive a portion of Brenda's property, including a "50% interest" in the house owned by Brenda and Allen and one-half of the value of Brenda's investment account.

- 726 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

In effect, Ramona was making a "claim" against Brenda's estate. Section 30-2209(4) defines a "claim" against the estate as follows:

> Claim, in respect to estates of decedents and protected persons, includes liabilities of the decedent or protected person whether arising in contract, in tort or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration. The term does not include estate or inheritance taxes, demands or disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate.

Throughout the county court proceedings, both Ramona and Hauck treated Ramona's statement of claim as a claim against Brenda's estate that arose pursuant to an alleged contract between Ramona and Brenda. In fact, both parties relied on § 30-2485, which specifically pertains to claims against an estate, to argue whether Ramona timely filed her claim against Brenda's estate. And, ultimately, in its order granting Hauck's motion for summary judgment and finding Ramona's claim against the estate to be time barred by the language of § 30-2485, the county court also treated Ramona's statement of claim as a claim filed against Brenda's estate.

On appeal, Ramona now argues that her statement of claim is not, in fact, a claim against Brenda's estate, but is instead a breach of contract action. Ramona asserts that she is not a creditor of the estate, but, rather, a beneficiary. Based on these assertions, Ramona contends that the county court erred in finding that her suit was time barred based on the language of § 30-2485. Essentially, she asserts that the statute of limitations delineated in § 30-2485 does not apply to a breach of contract action. During her oral argument, Ramona's counsel indicated that Ramona had also filed a separate action regarding the breach of contract claims against the estate in district court.

- 727 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

Ramona's argument that her statement of claim is actually a breach of contract action is based on the Nebraska Supreme Court's recent opinion in *White v. White*, 316 Neb. 616, 6 N.W.3d 204 (2024). Before we discuss the substance of the Supreme Court's opinion, we note that when the opinion was released in May 2024, the April 2024 summary judgment hearing on the parties' various motions had concluded, but the county court had not yet issued its June 2024 order granting Hauck's motion for summary judgment. Thus, no argument regarding the impact of *White* was made to the county court.

In *White v. White, supra*, the Supreme Court was presented with a dispute between a decedent's wife and the copersonal representatives of the decedent's estate over the ownership of $100,000 and a camper under the terms of a premarital agreement. In their argument to the Supreme Court, the copersonal representatives of the estate asserted that the decedent's wife was barred from receiving either asset because she failed to timely file a claim against the estate, as is required by § 30-2485. Instead of filing a claim in the probate proceedings, the decedent's wife had filed a complaint in district court against the copersonal representatives, alleging that they had breached the premarital agreement. In its opinion, the Supreme Court noted that although not analyzed in any of the lower court proceedings, the first step in addressing the copersonal representatives' assertion was to resolve whether the decedent's wife's cause of action was, in fact, a claim against the estate, which was subject to the statute of limitations delineated in § 30-2485.

The $100,000 in contention in *White v. White, supra*, was part of a premarital agreement between the decedent and his wife. The agreement provided that if the wife survived her husband, she would receive $100,000 from his estate. *Id*. This provision in the agreement went on to state: "'[T]his . . . shall be treated as a contract to make a Will.'" *Id*. at 627, 6 N.W.3d at 213. The Supreme Court found that the premarital agreement constituted a writing signed by the decedent that

- 728 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

established a valid contract to make a will. The court went on to hold that the effect of a breach of a valid contract to make a will is not to create a claim against the decedent's estate, but instead is to create a cause of action for breach of contract. The court explained that the decedent's wife was not a creditor of the estate who needed to file a claim, but, rather, she was a beneficiary of the estate, who could file a breach of contract action for the payment of the $100,000. *Id*. As such, the cause of action was not subject to the statute of limitations delineated in § 30-2485 for claims against an estate, but was subject to the 5-year statute of limitations for an action for breach of a written contract. See Neb. Rev. Stat. § 25-205(1) (Reissue 2016).

The Supreme Court also found that the decedent's wife's suit for the camper was not a claim against the estate: "[I]t was instead a dispute regarding the title of a specific asset allegedly belonging to [the decedent]'s estate." *White v. White*, 316 Neb. 616, 629, 6 N.W.3d 204, 214 (2024). Because § 30-2209(4) explicitly excludes "disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate" from the definition of a claim, the Supreme Court held the cause of action for the camper was not a claim and was not subject to the statute of limitations delineated within § 30-2485. *White v. White, supra*.

Given the Supreme Court's opinion in *White*, we find that here, the county court was required to first consider whether Ramona's statement of claim actually presented a claim against the estate pursuant to § 30-2209(4) before it considered whether any such claim was time barred under the language of § 30-2485. We recognize that the opinion in *White* was released less than a month prior to the county court's issuing its order finding Ramona's claims to be time barred. In addition, we are mindful that in Ramona's petition and in all of her arguments before the county court, she affirmatively asserted her belief that her statement of claim was a claim against Brenda's estate. And, while Ramona did change attorneys after

- 729 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

filing her original petition, she never raised the question of whether such petition accurately characterized the nature of her claim. In other words, Ramona never argued in the county court that she was raising a claim of breach of contract, rather than a claim against the estate, and her argument on appeal is directly contrary to the position she took below. She is arguing for the first time on appeal that her suit is actually a breach of contract action brought by a beneficiary of the estate.

[6] However, despite the fact that neither Ramona, nor Hauck, nor the county court ever questioned whether Ramona's claim and petition constituted anything other than a claim brought pursuant to § 30-2209(4), the Supreme Court's holding in *White* required the county court to first determine that exact point. The county court was required to determine whether Ramona's statement of claim raised a valid claim against the estate pursuant to the probate statutes. That question is a question of law that has to be addressed before determining whether such claim was timely presented pursuant to § 30-2485.

We conclude that neither the dispute over the house nor the dispute over the investment account constitutes a claim that is subject to the time limitations prescribed by § 30-2485.

*House.*

The dispute over the house is not a claim subject to § 30-2485 and, as such, is not barred from being asserted for being untimely filed. It was instead a dispute regarding the title of a specific asset allegedly belonging to the estate.

[7] As mentioned above, § 30-2209(4) explicitly excludes "disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate" from the definition of a "claim" as that term is addressed in § 30-2485. See, also, *In re Estate of Chaney*, 232 Neb. 121, 439 N.W.2d 764 (1989). Ramona's petition for allowance of claim indicates that she is seeking a "50% interest" in the house formerly owned by Brenda and Allen, which interest she asserts Brenda promised to her prior to Brenda's death. Accordingly,

- 730 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

Ramona is raising a title dispute for a specific asset that was alleged by Hauck to belong to Brenda's estate. The dispute regarding the title of the house thus did not involve a claim against the estate as defined by § 30-2209(4). And, because the dispute was not a claim against the estate, it is not time barred pursuant to the provisions of § 30-2485, as the county court found.

*Investment Account.*

The dispute regarding Brenda's investment account is also not a claim against her estate subject to the filing limitations provided in § 30-2485 and, as such, is not time barred pursuant to that statutory subsection. The investment account is, instead, a nonprobate asset.

Neb. Rev. Stat. § 30-2715 (Cum. Supp. 2024) provides a noninclusive list of nonprobate alternatives for the disposition of assets upon the death of a party to a multiparty or payable on death account. Included in the list of nonprobate assets is "an insurance policy, contract of employment, bond, mortgage, promissory note, certificated or uncertificated security, account agreement, custodial agreement, deposit agreement, compensation plan, pension plan, individual retirement plan, employee benefit plan, trust, marital property agreement, certificate of title, or other written instrument of a similar nature." § 30-2715(a). Such nonprobate assets can include a written provision that

> money or other benefits due to, controlled by, or owned by a decedent before death must be paid after the decedent's death to a person whom the decedent designates either in the instrument or in a separate writing, including a will, executed either before or at the same time as the instrument, or later.

§ 30-2715(a)(1).

Here, Brenda's investment account is referred to as an "Individual, Joint or Retirement Account[]" in the documentation offered at the summary judgment hearing. Brenda signed

- 731 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

a form in November 2020 designating her beneficiaries for this account. Contrary to the earlier version of this form, Brenda designated only her two biological children as primary beneficiaries. Brenda acknowledged the following when signing the beneficiary form:

I understand that if no designated beneficiary survives me, or if no beneficiary designation is in effect at my death, the account balance(s) will be paid to my spouse, or if I am not survived by a spouse, to my estate. I am aware that this form replaces all prior beneficiary designations for the account(s) listed on this form, becomes effective when received and accepted . . . and will remain in effect until I deliver . . . another designation form with a later date.

[8] Brenda's investment account was clearly a nonprobate asset as defined in § 30-2715. It was a financial account in which Brenda specifically designated in writing how the funds should be allocated upon her death. And, given that the designated beneficiaries of the investment account were alive at the time of Brenda's death, the funds were paid to the beneficiaries, and not to Brenda's estate. Because the funds in the investment account were never a part of Brenda's estate, Ramona's dispute regarding the allocation of these funds is not a proper claim against the estate. Accordingly, § 30-2485 is not applicable to the dispute regarding the investment account funds and does not serve to bar Ramona's prosecution of this dispute.

Given that neither the dispute regarding the residence nor the dispute regarding the investment account is a proper claim against the estate as contemplated by the definition of a claim delineated in § 30-2209(4), we must vacate the order of the county court that granted summary judgment to Hauck on the basis that Ramona's claims against the estate were not timely filed. In addition, given our conclusion that the disputes regarding the residence and the investment account are not claims, the summary judgment motions filed by Ramona

- 732 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE ESTATE OF FARRINGTON
Cite as 33 Neb. App. 716

and Hauck in February 2024 are not moot. We remand to the county court with directions to determine whether it is the proper forum to consider the issues raised in the remaining two motions for summary judgment and conduct any additional proceedings that may be necessary.

## CONCLUSION

We vacate the county court's order granting Hauck's March 2024 motion for summary judgment because Ramona's suit was time barred. We remand the cause with directions for the county court to conduct such other necessary proceedings as provided herein.

Vacated and remanded with directions.